Defendant Humana Insurance Company ("Defendant" or "Humana") has filed a Motion to Dismiss the Plaintiffs Prime Healthcare Services, Inc. et al.'s[1] ("Plaintiffs")
*1318 Fourth Amended Complaint ("4AC"). (Doc. No. 83.) Plaintiffs filed their Opposition on February 26, 2018 (Doc. No. 84) and Defendant filed its Reply on March 5, 2018 (Doc. No. 85).
On March 14, 2018, Plaintiffs filed a Motion for Leave to File a Sur-Reply to Defendants' Reply. (Doc. No. 86.)
The Court determined Defendants' Motion to be appropriate for resolution without oral argument pursuant to Local Rule 7-15 and vacated the hearing originally set for March 19, 2018. (Doc. No. 87.) After considering all papers filed in support of and in opposition to Defendant's Motion, the Court rules as follows.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. THE MEDICARE ACT
The Medicare Act (hereinafter, the "Act" or "Medicare") was enacted in 1965 as a federal health insurance program primarily benefitting those 65 years of age and older. See 42 U.S.C. §§ 1395 et seq. Courts in this district have noted that the Act has been described as "among the most completely impenetrable texts within human experience," requiring "dense reading of the most tortuous kind." See Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan, 210 F.Supp.3d 1225, 1227 (C.D. Cal. Sept. 27, 2016) (citing Rehab. Ass'n of Virginia, Inc. v. Kozlowski, 42 F.3d 1444, 1450 (4th Cir. 1994) ).
This case concerns Part C of the Medicare Act, enacted in 1997 and creating the Medicare Advantage ("MA") program. 42 U.S.C. §§ 1395w-21 - 29. Under Part C, Medicare enrollees can receive Medicare benefits through private organizations called Medicare Advantage Organizations (individually "MAO," or collectively "MAOs") instead of the government. Id. The government pays MAOs monthly fees in exchange for assuming the risk of providing covered services to enrollees. 42 U.S.C. § 1395w-23. The amount that MAOs receive per enrollee is based on contracts with the Centers for Medicare and Medicaid Services ("CMS"), an agency within the Department of Health and Human Services. SCAN Health, 210 F.Supp.3d at 1226-27 (citing 42 U.S.C. § 1395w-27 ).
MAOs contract with certain health care providers to provide Medicare services. SCAN Health, 210 F.Supp.3d at 1226-27 (citing 42 U.S.C. § 1395w-22(d)(1) ). MAOs also must provide coverage for emergency services without regard to the emergency care provider's contractual relationship with the MAO, however. Id. MAOs reimburse non-contracting providers who provide these emergency services based on rates set by the Medicare Act and related regulations. SCAN Health, 210 F.Supp.3d at 1227-28. Payment amounts due to a non-contracted emergency provider are limited to what "the provider would collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. § 422.214(a). Conversely, contracting providers, who enter into signed agreements with MAOs, may "establish[ ] payment amounts for services furnished to a beneficiary enrolled in an MA coordinated care plan, an MSA plan, or an MA private fee-for-service plan" even above the Medicare cap. See 42 C.F.R. § 422.214. 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that 42 U.S.C. § 405(g) is "the sole avenue for judicial review" for claims " 'arising under' the Medicare Act." Heckler v. Ringer, 466 U.S. 602, 614-15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).
In 2003, Congress amended Part C's preemption provision to read as follows:
*1319 The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.
Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1148 (9th Cir. 2010) (quoting 42 U.S.C. § 1395w-26(b)(3) ). "The Conference Report accompanying the Act explains that ... Congress intended to broaden the preemptive effects of the Medicare statutory regime." Id. (citing H.R. Rep. No. 108-491, at 447 (2003) (Conf. Rep.) ).
B. FACTUAL BACKGROUND
Plaintiff Prime Healthcare Services, Inc. owns and operates hospitals throughout the country, including the 17 plaintiff-hospitals in this case. (4AC ¶¶ 4-20.) Defendant is a health insurance company and a MAO. (Id. ¶¶ 22, 28-19.)
Plaintiffs and Defendant entered into a series of Letters of Agreement (individually "LOA," and collectively "LOAs")[2] under which Plaintiffs agreed to provide hospital services to Defendant's Medicare Advantage health plan members ("MA Members"). (Id. ¶ 29.)
Plaintiffs maintain that from January 1, 2012 through February 29, 2016, Defendant underpaid and failed to pay for emergency and other health care services that Plaintiffs provided to Defendants' commercial health plan members ("CP Members") and MA health plan members. (Id. ¶¶ 1, 32.) Plaintiffs allege Defendant achieved such underpayment by unilaterally, systematically altering codes related to the medical services for which Plaintiffs had billed Defendant, and replacing those codes with codes pertaining to lower-cost services or procedures ("downcoding"). (Id. ) Such billing manipulation allegedly resulted in reduction of payments for the actual services provided by Plaintiffs to Defendant's CP Members and MA Members. (Id. ¶¶ 1, 33) Plaintiffs further allege that Defendant "failed to properly pay Plaintiffs for the inpatient services rendered to Defendants' health plan members at the appropriate inpatient rates" and that "Defendants were improperly recouping their payments for Plaintiffs' services in breach of the aforementioned contracts. (Id. ¶¶ 1, 35.)
As a result of the alleged billing manipulations, Plaintiffs contend that they have been damaged in an amount not less than $75,000, exclusive of interest. (Id. ¶ 37.)
C. PROCEDURAL HISTORY
Plaintiffs initiated this action on May 25, 2016 (Doc. No. 1) and filed the First Amended Complaint ("FAC") on August 32, 2016 (Doc. No. 19). The FAC contains the following six claims: (1) breach of written contract; (2) breach of oral contract; (3) breach of implied-in-fact contract; (4) breach of implied covenant of good faith and fair dealing; (5) negligent misrepresentation; and (6) violation of California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200. (FAC at 9-14.) On September 14, 2016, Defendant filed its Motion to Dismiss the FAC (Doc. No. 22), which the Court granted on November 4, 2016 (Doc. No. 30).
Plaintiff filed their Second Amended Complaint ("SAC") on November 18, 2016, re-alleging the same claims as those contained in the FAC. (Doc. No. 31.) On December 2, 2016, Defendants filed a Motion to Dismiss the SAC, which the Court *1320 granted on January 27, 2017 (Doc. No. 43). In its Order, the Court, the Hon. Beverly Reid O'Connell presiding, found that Plaintiffs' MA claims arose under the Medicare Act, and that the Court could only exercise jurisdiction over the MA claims if Plaintiffs adequately pleaded exhaustion of the Medicare Act's requirements. (Doc. No. 43 at 10-11.)
Plaintiff filed their Third Amended Complaint ("TAC") on February 13, 2017, re-alleging the following claims: (1) breach of oral contract; (2) breach of implied-in-fact contract; (3) negligent misrepresentation; and (4) violation of the UCL. (Doc. No. 45.) On February 27, 2017, Defendant moved to dismiss the negligent misrepresentation claim in the TAC, which the Court granted on April 7, 2017 (Doc. No. 50).
On December 18, 2018, the parties filed a Stipulation for Leave to File a Fourth Amended Complaint. (Doc. No. 78.) In the Stipulation, Plaintiffs indicated that new evidence demonstrates their claims are not subject to an exhaustion requirement under Medicare laws or regulations. (Id. at 2.) The Court approved the Stipulation on January 10, 2018, and as a result, the 4AC was deemed filed as of January 8, 2018. (Doc. No. 81.) Plaintiffs add the allegation that they "have appealed the claims and either exhausted their administrative remedies (if any), or Defendants have refused to act on appeals, making the process futile" (4AC ¶ 35), and assert the following claims in the 4AC: (1) breach of written contract; (2) breach of oral contract; (3) breach of implied-in-fact contract; (4) breach of the covenant of good faith and fair dealing; and (5) violation of the UCL. (Id. at 12-16.)
II. LEGAL STANDARD
Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2) ; Bell Atl. Corp. v Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint-as well as any reasonable inferences to be drawn from them-as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." Schwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.
To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. 1955 ; Ashcroft v. Iqbal, 556 U.S. 662, 697, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.' " Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955 ).
*1321 The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).
III. DISCUSSION
Defendant moves to dismiss the 4AC on the grounds that the Medicare Act preempts all of Plaintiffs' claims. (Doc. No. 83-1 at 5.) The Act provides, in relevant part, that its standards "shall supersede any State law or regulation ... with respect to the MA plans which are offered by MA organizations. 42 U.S.C. § 1395w-26(b)(3) (effective Dec. 8, 2003); see also 42 C.F.R. § 422.402 (2005). Defendants point out that this Court has already found that Plaintiffs' breach of written contract claim to be "inextricably intertwined with a claim for Medicare benefits, and as such, arises under Medicare." (Doc. No. 83-1 at 14 (citing Prime Healthcare Servs. Inc. v. Humana Ins. Co., Case No. CV 16-01097-BRO (JEMx), 2016 WL 6591768, at *10 (C.D. Cal. Nov. 4, 2016).) Defendants argue that all of Plaintiffs' claims in the 4AC are likewise inextricably intertwined with a claim for Medicare Benefits, and therefore, are preempted. (Id. at 14-15.) Plaintiffs raise one main point in their Opposition-they contend that because neither the Act nor CMS regulations "set[ ] the standards for payment terms and disputes [between MAOs and contracted providers], state law applies." (Doc. No. 84 at 17.) "Since there are no administrative remedies available to contracted providers to address disputes over payment under their contracts," and "if state law does not apply, then Humana can breach its contracts with providers with impunity because providers will have no avenue to address any such breach." (Id. (emphasis in original).)
The Court again agrees with Defendant's position that Plaintiffs' claims are "inextricably intertwined" with claims for Medicare benefits, thus arise under the Medicare Act, and are subject to preemption. See Heckler, 466 U.S. at 624, 104 S.Ct. 2013 (2004). This conclusion is not altered by Plaintiffs' additional allegations regarding the futility of administrative exhaustion, as state law claims are not the proper mechanism by which to obtain relief for their Medicare claims. The weight of controlling authority-most notably the Ninth Circuit's decision in Uhm v. Humana Health Insurance Company, 620 F.3d 1134 (9th Cir. 2010) and the district courts that have interpreted and applied Uhm-support Defendants' position. The authorities cited by Plaintiffs are either outdated, inapplicable, or non-binding.[3]
*1322 In Uhm, the Ninth Circuit found that state law claims similar to those raised by Plaintiffs here were preempted by the Act. 620 F.3d at 1148-1158. The Uhm panel's reasoning applies to all of Plaintiffs' state law claims in this case. In each LOA, each plaintiff-hospital agreed to "comply with all Medicare and other federal health care program laws, regulations and program instructions that apply to the service furnished to the Members including the Medicare Advantage Provisions Attachment to this Agreement." (Defendant's RJN, Declaration of Daniel M. Glassman, Doc. No. 83-2, Exs. A-N.)[4] Plaintiffs' allegations regarding downcoding or underpayment thus require analysis of the Medicare Advantage Provisions Attachments and the relevant provisions of the Act itself that define the Medicare rate for the provided service. As Defendant points out, these provisions include: 42 U.S.C. § 1394l (t), which defines Medicare allowable rates for outpatient hospital services; 42 U.S.C. § 1395ww, which defines Medicare allowable rates for inpatient hospital services; and 42 U.S.C. § 1394w-22(k), which requires non-contracting providers to accept from the MAO the amount the provider could collect from the Medicare program if the member was not enrolled in the MAO. (See Doc. No. 83-1 at 13.) Indeed, the Act, which sets forth the reimbursement standards and rates for MA members, governs all of Plaintiffs' claims alleged in the 4AC. Other district courts confronting similar scenarios have found Rule 12(b)(6) dismissal appropriate. See, e.g., Shakespeare v. SCAN Health Plan, Inc., Case No. 3:17-CV-568-BTM-MDD, 2018 WL 340422, at *6 (S.D. Cal. Jan. 8, 2018) ("in order to determine Plaintiff's tort claims, the Court would necessarily need to determine whether Plaintiff was entitled to the Watchman Device in the first place, a decision that is governed by detailed CMS standards ... As such, Plaintiff's claims are preempted"); Phillips v. Kaiser Foundation Health Plan, 953 F.Supp.2d 1078, 1090 (N.D. Cal. 2011) (UCL claims preempted). Accordingly, this Court follows their reasoning and finds that Plaintiffs have failed to state any claims upon which relief can be granted.[5]
IV. CONCLUSION
For the reasons stated above, the Court GRANTS Defendant's Motion. Plaintiffs shall have one final opportunity to amend their complaint and must do so by no later than April 16, 2018. Furthermore, as the Court VACATES the April 16, 2018 hearing on Plaintiffs' Motion for Leave to File a Sur-Reply.
IT IS SO ORDERED.

The Plaintiffs are: (1) Alvarado Hospital LLC dba Alvarado Hospital Medical Center; (2) Veritas Health Services, Inc. dba Chino Valley Medical Center; (3) Desert Valley Hospital, Inc. dba Desert Valley Hospital; (4) Prime Healthcare Services-Garden Grove, LLC dba Garden Grove Hospital & Medical Center; (5) Prime Healthcare Huntington Beach, LLC dba Huntington Beach Hospital; (6) Prime Healthcare Services-La Palma, LLC dba La Palma Intercommunity Hospital; (7) Prime Healthcare Services-Montclair, LLC dba Montclair Hospital Medical Center; (8) Prime Healthcare Paradise Valley, LLC dba Paradise Valley Hospital; (9) Prime Healthcare Services-San Dimas, LLC dba San Dimas Community Hospital; (10) Prime Healthcare Services-Shasta, LLC dba Shasta Regional Medical Center; (11) Prime Healthcare Services-Sherman Oaks, LLC dba Sherman Oaks Hospital; (12) Prime Healthcare Anaheim, LLC dba West Anaheim Medical Center; (13) Prime Healthcare Services-North Vista, LLC dba North Vista Hospital; (14) Prime Healthcare Services-Reno, LLC dba Saint Mary's Regional Medical Center; (15) Prime Healthcare Services-St. Mary's Passaic, LLC dba St. Mary's General Hospital; (16) Prime Healthcare Services-Garden City, LLC dba Garden City Hospital; (17) Prime Healthcare Services-Pampa Regional Medical Center, LLC dba Pampa Regional Medical Center; and, (18) Prime Healthcare Foundation, Inc.

Defendant has requested that the Court take judicial notice of all LOAs between itself and the plaintiff-hospitals. As the Court had previously taken judicial notice of the LOAs in connection with ruling on Defendants' first motion to dismiss (see Doc. No. 43 at 3), the Court again GRANTS Defendants' request.

Despite the Court's finding in its earlier order that "Plaintiffs' reliance on [Rencare, Ltd v. Humana Health Plan of Texas, Inc. 395 F.3d 555 (5th Cir. 2004) ] is inapposite; the case is not binding on the Court, its reasoning is based on a former Medicare statutory framework, and it has been rejected by the SCAN Health court in view of the Ninth Circuit's conclusion in Kaiser that Medicare reimbursement to providers should also be considered, broadly speaking, a 'claim for benefits' (Doc. No. 30 at 10-11), Plaintiffs again cite to Rencare in their Opposition. Furthermore, Plaintiffs cite to the earlier version of the Uhm v. Humana decision that was later withdrawn by the Ninth Circuit following its grant of re-hearing in the case. (See Doc. No. 84 at 20 (citing Uhm v. Humana Health Plan Inc., 540 F.3d 980 (9th Cir. 2008).) Plaintiffs subsequently filed a Motion for Leave to File a Sur-Reply, set the hearing for April 16, 2018, and apologized for the mis-citation. (Doc. No.86.) The Court has reviewed the proposed sur-reply, which consists of one paragraph re-hashing an argument contained in the Opposition brief. Thus, although the sur-reply will be deemed filed, the Court finds that it does not alter the determination that Plaintiffs' claims are preempted. Thus, the Court VACATES the April 16, 2018 hearing on Plaintiffs' Motion.

For this reason, the Court rejects Plaintiffs' argument that state law governs the LOAs. Each plaintiff-hospital explicitly agreed to comply with the Medicare Act.

The Court rejects Plaintiffs' baseless assertion that the Court need not consider Defendants' Motion as it relates to the fourth and fifth claims because "[i]f a party wishes to dispose of allegations contained within a claim, they must bring a motion to strike." (Doc. No. 84 at 26.) Defendants' Motion was proper under Rule 12(b)(6).