# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2024

Lyle W. Cayce
Clerk

———————

No. 23-10901

———————

Caris MPI, Incorporated, *doing business as* Caris Life Sciences,

*Plaintiff—Appellant*,

*versus*

UnitedHealthcare, Incorporated; United Healthcare Services, Incorporated; UnitedHealthcare Community Plan of Texas, L.L.C.; Unitedhealthcare Benefits of Texas, Incorporated; Optum Incorporated,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-3101

———————————————————————

Before Clement, Engelhardt, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Caris MPI, Inc. (Caris) sued UnitedHealthcare, Inc. (United) in Texas state court, alleging various state law claims. United removed the case, asserting federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), and Caris moved to remand. The district court denied Caris's motion and then dismissed Caris's claims without prejudice for failure to exhaust administrative remedies under the Medicare Act, 42 U.S.C. §§ 1395–1395*lll*.

No. 23-10901

We agree that federal officer jurisdiction exists in this case. But the district court erred in dismissing Caris's claims because "the administrative review process attendant to [Medicare] Part C does not extend to claims in which an enrollee has absolutely no interest," such that there are no administrative remedies for Caris to exhaust. *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 559 (5th Cir. 2004). Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I.

Caris is a private healthcare provider that specializes in cancer diagnostic testing. United is a private insurance company that contracts with the Centers for Medicare and Medicaid Services (CMS) to provide health insurance through the Medicare Advantage program. This case arises from United's attempt to recoup money it paid to Caris for services provided to United's Medicare Advantage enrollees. We briefly explain the relationship between providers, insurance companies, and CMS under Medicare Advantage and then detail the specific background of this case.

## A.

Congress created the Medicare Advantage program, also known as Medicare Part C, as an alternative to traditional Medicare. *See* U.S. Dep't of Health & Hum. Servs., Understanding Medicare Advantage Plans 1 (2023), medicare.gov/Pubs/pdf/12026-Understanding-Medicare-Advantage-Plans.pdf. That program gives enrollees the choice to obtain benefits through private insurance companies rather than from the government. *See id* at 1–2. Private companies that insure Medicare Advantage enrollees are called Medicare Advantage Organizations (MAOs). 42 C.F.R. § 422.2. MAOs receive fixed payments

from CMS based on the number of enrollees in the company's Medicare Advantage plan. 42 U.S.C. § 1395w-23(a)(1)(A).[1]

MAOs are empowered to determine "whether an [enrollee] is entitled to receive a health service under [Medicare] and the amount (if any) that the individual is required to pay with respect to such service." *Id.* § 1395w-22(g)(1)(A). These are known as "organization determinations." 42 C.F.R. § 422.566. Organization determinations include an MAO's "refusal to provide or pay for services, in whole or in part, . . . that the enrollee believes should be furnished or arranged for" by the MAO. *Id.* § 422.566(b)(3). Parties to an organization determination are not limited to enrollees and MAOs. *Id.* § 422.574. Relevant to this case, "parties to [an] organization determination [include] . . . [a]n assignee of the enrollee (that is, a physician or other provider who has furnished a service to the enrollee and formally agrees to waive any right to payment from the enrollee for that service)." *Id.* § 422.574(b).

MAOs "must provide meaningful procedures" for resolving disputes concerning organization determinations. 42 U.S.C. § 1395w-22(f); *see* 42 C.F.R. § 422.566(a). If an MAO decides that services are not covered by Medicare, the MAO must notify the enrollee in writing. 42 U.S.C. § 1395w-22(g)(1)(B). The enrollee may challenge the organization determination using the MAO's internal process. *Id.* § 1395w-22(g)(2); 42 C.F.R. § 422.582. If the MAO affirms its organization determination, "the issues that remain in dispute must be reviewed and resolved by an

---

[1] Parts of the Medicare Act, and courts construing the law, refer to "Medicare + Choice" instead of "Medicare Advantage." *See, e.g.*, 42 U.S.C. § 1395w-23(a)(1)(A); *RenCare*, 395 F.3d at 556. That is because the Medicare + Choice program was renamed the Medicare Advantage program in December 2003. *See* CMS.gov, Health Plans – General Information, https://www.cms.gov/medicare/enrollment-renewal/health-plans, (last visited July 8, 2024).

independent, outside entity." 42 C.F.R. § 422.592(a); *see* 42 U.S.C. § 1395w-22(g)(4). If the enrollee is dissatisfied with the independent entity's decision, the enrollee has a right to a hearing before CMS. 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.600. If the enrollee remains dissatisfied, he or she may seek judicial review of the organization determination, but only after the enrollee has completely exhausted his or her administrative remedies under the Medicare Act and its regulations. *See* 42 U.S.C. § 1395w-22(g)(5) (incorporating the judicial review procedure under 42 U.S.C. § 405(g)); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (noting that exhaustion is a "prerequisite to jurisdiction" under 42 U.S.C. § 405(g)). Notwithstanding the foregoing process, once "an enrollee has no further liability to pay for services that were furnished by an MA[O], a determination regarding th[ose] services is not subject to appeal." 42 C.F.R. § 422.562(c)(2).

MAOs engage healthcare providers to provide medical services enrollees need. 42 U.S.C. § 1395w-22(d)(1); 42 C.F.R. § 422.200. These relationships can be structured in two ways. First, an MAO may enter an "explicit agreement" with a provider, whereby the MAO agrees to pay pre-determined rates for specific treatments. *See* 42 U.S.C. § 1395w-22(j)(6). An MAO's payments to "contracted providers" are governed solely by the terms of the contract. 42 C.F.R. § 422.520(b)(2). Second, "[a]ny provider . . . that does not have in effect a contract establishing payment amounts for services furnished to a beneficiary enrolled in a[] [Medicare Advantage] plan" is a "noncontract provider." *Id.* § 422.214(a)(1). The MAO is required to pay noncontract providers the "amount the provider would have received under original Medicare." *Id.* §§ 422.100(b)(2), 422.216(a)(2).

Once an MAO determines that an enrollee is entitled to receive a health service under his or her Medicare Advantage plan and the enrollee has met his or her cost-sharing obligations (i.e., deductibles or co-pays), the

4

Medicare Act limits the enrollee's liability for further payments. *See id.* § 422.504(g). The Act achieves this by requiring contracted providers to accept the pre-determined contract rates as "payment in full," and by requiring noncontracted providers to accept the Medicare rate as "payment in full." 42 U.S.C. § 1395w-22(k)(1), (k)(2)(A)(i). Further, if a noncontract provider participates in Medicare and receives payment, then the provider "may not collect from an enrollee more than the cost-sharing established by the [Medicare Advantage] fee-for-service plan." 42 C.F.R. § 422.216(b)(2). MAOs "must adopt and maintain arrangements satisfactory to CMS to protect its enrollees from incurring liability . . . for payment of any fees that are the legal obligation of the MA[O]." *Id.* § 422.504(g)(1). Consequently, MAOs are prohibited from recouping from enrollees any payments the MAO makes to providers. *See id.*

## B.

Caris has provided cancer diagnostic services to United's Medicare Advantage customers for over ten years. Caris and United had no written contract during that period. Rather, they interacted "according to their longstanding course of dealings, representations . . . , and implied contracts."[2] Summarized, Caris obtained preauthorization from United before providing its services; based on that preauthorization, Caris provided patients the requested services; Caris then sent United requests for payment using agreed-upon billing codes; and United paid the claims.

---

[2] The parties dispute whether this relationship makes Caris a "contracted provider" or a "noncontract provider." That distinction gets to the heart of United's preemption defense. *See infra* Part III.B.1. Because we are only determining whether removal of this case was proper, we leave the merits of that question for the district court. *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 n.10 (5th Cir. 2020) (en banc).

No. 23-10901

In 2020, United audited Caris's past claims and determined that Caris had used incorrect billing codes between February 2016 and July 2018, resulting in overpayments of $1,276,711.29. United began recouping the purported overpayments by offsetting them against new payment claims from Caris. Caris timely followed United's internal process to challenge United's recoupment. After United rejected Caris's internal appeals, Caris filed suit against United in Texas state court. Caris alleged state law claims including breach of implied contract, unjust enrichment, conversion, and estoppel.

United then filed a notice of removal invoking federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). As one of its colorable federal defenses justifying removal, United asserted that Caris was required to exhaust its administrative remedies through CMS before filing suit. Caris responded with a motion to remand. Considering Caris's motion, the district court raised the concern that, "should [it] deny the motion to remand," it might lack subject matter jurisdiction because Caris failed to exhaust its administrative remedies under the Medicare Act. The district court therefore directed the parties to conduct jurisdictional discovery on the issue.

After an evidentiary hearing, the district court denied Caris's motion to remand, concluding that federal officer jurisdiction existed. It then dismissed Caris's claims without prejudice, finding that Caris failed to exhaust its administrative remedies as required by the Medicare Act. Caris timely appealed.

## II.

We review a district court's denial of a motion to remand *de novo*. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 182 (5th Cir. 2018). Likewise, we review a dismissal for lack of subject matter jurisdiction *de novo*. *Gilbert v. Donahoe*, 751 F.3d 303, 306–07 (5th Cir. 2014).

6

## III.

We first discuss the district court's denial of Caris's motion to remand and then address its dismissal of Caris's claims for failure to exhaust.

## A.

"[F]ederal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines:  it is not narrow or limited."  *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 450 (5th Cir. 2021) (quoting *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017)).  Though the defendant maintains the burden to establish the existence of jurisdiction, "we review the district court's order . . . 'without a thumb on the remand side of the scale.'"  *City of Walker v. La. through Dep't of Transp. & Dev.*, 877 F.3d 563, 569 (5th Cir. 2017) (quoting *Kleinert*, 855 F.3d at 311).  The district court concluded that United met its burden to establish jurisdiction.  We agree.

To remove a case under § 1442(a), a defendant must show four things:  "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions."  *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc).  Neither party disputes that United is a "person" within the meaning of § 1442(a).  *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 461–62, (5th Cir. 2016), *overruled on other grounds by Latiolais*, 951 F.3d 286.  We address the remaining elements in turn.

## 1.

United asserts that it raised two colorable federal defenses in its notice of removal:  Caris failed to exhaust its administrative remedies, and Caris's

state law claims are preempted by the Medicare Act.[3] "To be 'colorable' [an] asserted federal defense need not be 'clearly sustainable.'" *Latiolais*, 951 F.3d at 296 (quoting *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999)). In other words, a colorable federal defense does not require the party asserting federal officer removal jurisdiction "to win [its] case before [it] can have [the case] removed." *Id.* (quoting *Acker*, 527 U.S. at 431) (internal quotation marks omitted). "Instead, an asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Id.* at 297 (quoting *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017)).

According to Caris, if the district court "erred as a matter of law in holding that Caris was required to exhaust its claims[,] [i]t follows that [United] lack[s] a colorable exhaustion defense." Not so. That United's exhaustion defense fails on the merits, as we discuss *infra*, does not mean its defense was not colorable when asserted. In pressing this defense, United relied on this court's unpublished opinion in *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at \*5 (5th Cir. Mar. 20, 2023), which held that a similarly situated provider was required to exhaust administrative remedies before suing an MAO for a payment dispute. As we will explain, *Trinity* is distinguishable from this case, but United's reliance on *Trinity* was not "wholly insubstantial or frivolous." *See Latiolais*, 951 F.3d at 297. And other courts have held that providers like Caris must first exhaust administrative remedies before filing suit, *e.g.*, *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584

---

[3] United raised a third federal defense—immunity under the Medicare Act—in its notice of removal. But it does not discuss that defense in its brief on appeal, so we do not consider it. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

(11th Cir. 2017)—including the district court here, which, after all, ruled in United's favor. Thus, we cannot say that United's exhaustion defense was "immaterial and made solely for the purpose of obtaining jurisdiction." *Latiolais*, 951 F.3d at 297. Though United's defense is ultimately unavailing, it was colorable for purposes of federal officer removal. *See id.*

United's federal preemption defense is also colorable for purposes of federal officer removal.[4] The preemption provision for Medicare Advantage provides that "[t]he standards established under this part shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans [that] are offered by MA[O]s under this part." 42 U.S.C. § 1395w-26(b)(3). Further, the Medicare Advantage regulations require that "[a]ny provider . . . that does not have in effect a contract establishing payment amounts for services furnished to a beneficiary . . . *must* accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. § 422.214(a)(1) (emphasis added). Based on these provisions, other courts have held that state law quasi-contract claims like those brought by Caris are preempted by the Medicare Act. *See, e.g.*, *Tenet*, 875 F.3d at 591 (stating that "[t]he Medicare Act and its implementing regulations . . . expressly forbid noncontract providers from raising" quantum meruit or quasi-contract claims); *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148–50 (9th Cir. 2010) (finding that Congress likely "intended to expand the preemption provision beyond those state laws and

---

[4] The district court did not discuss this defense, as it sustained United's exhaustion argument. Caris avers that we should remand the case and allow the district court "to decide the preemption question in the first instance." But, at least as to whether United has asserted a colorable defense, we "may affirm . . . on any ground supported by the record and presented to the district court." *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 887 (5th Cir. 2024) (alteration in original) (quoting *Wantou v. WalMart Stores Tex., L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022)).

regulations inconsistent with the enumerated standards"); *Prime Healthcare Servs. v. Humana Ins. Co.*, 298 F. Supp. 3d 1316, 1319–22 (C.D. Cal. 2018) (finding the plaintiff's quasi-contract claims to be preempted). This court has yet to rule on the issue.

Caris cites no contrary caselaw. Nevertheless, it argues that United fails to carry its burden for its affirmative defense. But that is not for us to decide today. *See Latiolais*, 951 F.3d at 297 n.10 (cautioning courts to "avoid premature merits determination . . . . even if a federal defense makes sharp demands" (internal quotation marks omitted)). At the very least, United's preemption defense is "plausible" and therefore colorable as required by 28 U.S.C. § 1442(a). *See id.* at 297.

**2.**

Next, we consider whether United has acted pursuant to a federal officer's direction.[5] *Id.* at 296. "We construe the 'acting under' requirement broadly." *Trinity*, 2023 WL 2573914, at *3 (citing *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)). A removing defendant need not prove that its "conduct was precisely dictated by a federal officer's directive." *St. Charles*, 990 F.3d at 454. "Instead, the 'acting under' inquiry examines the *relationship* between the removing party and the relevant federal officer . . . ." *Id.* at 455. A relationship is sufficiently close if the federal officer exercises "subjection, guidance, or control" over the removing party and that party is assisting or helping carry out a federal officer's duties, as opposed merely to "*complying* with the law." *Watson*, 551 U.S. at 151–52. When a contractor helps the Government perform a job that, "in the absence of a contract . . . ,

---

[5] By only referencing it in a footnote, Caris likely forfeited its argument that United was not acting pursuant to a federal officer's direction. *See Rollins*, 8 F.4th at 397 n.1. Still, we briefly address the point to explain how United's recoupment of payments is associated with an act made pursuant to CMS's direction.

the Government itself would have had to perform," and that relationship involves "detailed regulation, monitoring, or supervision," the private contractor is "acting under" a federal officer's direction. *See id.* at 153–54.

As discussed, CMS contracts with United to effectuate Medicare coverage for program enrollees. In that regard, United is helping CMS carry out its duties by providing insurance coverage that CMS would have otherwise been required to provide in the absence of its contract with United. United is also subject to "detailed regulation, monitoring, [and] supervision" through its contract with CMS. *See id.* at 153. As an example, United's contract with CMS requires United to "develop, compile, evaluate, and report to CMS" data regarding United's fiscal soundness and "all information that is necessary for CMS to administer and evaluate" the Medicare Advantage program. Relevant to this case, United is required to maintain detailed accounting records regarding services provided to enrollees and allows CMS to audit those records at any time during that period. Beyond those contractual obligations, the Medicare Act subjects MAOs like United to extensive oversight. *See* 42 U.S.C. §§ 1395w-21–28; 42 C.F.R. §§ 422.1–422.2615. Given United's role in fulfilling the mandate of the Medicare Act and CMS's broad oversight of that role, this element for federal officer jurisdiction is met.

**3.**

Finally, we address whether United's payment recoupment is connected or associated with an act made pursuant to CMS's direction. Traditionally, to invoke federal officer jurisdiction, the removing party was required to show a "causal connection" between the defendant's action taken pursuant to the Government's direction and the plaintiff's injury. *See, e.g.*, *Savoie*, 817 F.3d at 462. However, in *Latiolais*, this court rejected the "causal nexus" test and embraced the broader "connected or associated"

test set forth by the Removal Clarification Act. *See* 951 F.3d at 291–96; *cf. St. Charles*, 990 F.3d at 454 (recognizing that "though the 'acting under' and 'connection' elements may often ride in tandem toward the same result, they are distinct").

Though this court has yet precisely to delimit the contours of the less stringent "connected or associated" test, *see Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 375 (5th Cir. 2023), United easily meets the *Latiolais* standard. United's contract with CMS allows CMS periodically to audit United's records regarding services provided to enrollees. At the evidentiary hearing conducted by the district court, United testified that its contract with CMS requires United to "take action" if it finds improper payments or overpayments during those audits. Indeed, United stated that the purpose of its audit of Caris was to "ensure that it complied with the CMS guidelines that [United] was obligated to follow." Even Caris's expert admitted that United's actions in conducting the audit were "governed by the manuals, the procedures, the guidelines, and the regulations that have been promulgated by CMS." This evidence, which Caris does not dispute, clearly shows United's recoupment of payments was "connected or associated" with its obligations to CMS under their contract.

To recap: Because United established all four elements of federal officer jurisdiction under 28 U.S.C. § 1442, the district court properly denied Caris's remand motion and retained jurisdiction over Caris's claims.

**B.**

We reach a different conclusion regarding the district court's dismissing Caris's claims for failure to exhaust. Relying on this court's decision in *Trinity*, the district court held that Caris was required to exhaust administrative remedies because United's recoupment of prior payments was an organization determination. It distinguished *RenCare* because, unlike

the provider in that case, Caris nowhere waived its right to seek payment from enrollees via a written contract. Caris contends that the district court misinterpreted *Trinity* and *RenCare*. According to Caris, under *RenCare*, the dispositive question is not whether the parties traveled under a written contract, but whether an enrollee has an interest in the dispute. We agree with Caris.

Like this case, *RenCare* involved a payment dispute between an MAO, Humana, and a healthcare provider, RenCare. 395 F.3d at 556–57. Unlike this case, Humana and RenCare's relationship was governed by a written contract. *See id.* at 558 (referencing the "parties' privately-agreed-to payment plan"). After Humana and RenCare "became embroiled in a dispute over reimbursement," RenCare sued Humana in Texas state court for breach of contract, among other state law claims. *Id.* at 557. Humana removed the case, asserting federal question jurisdiction under 28 U.S.C. § 1331, and RenCare moved to remand. *Id.* The district court denied RenCare's motion[6] and dismissed RenCare's claims, "finding that RenCare had failed to exhaust its administrative remedies under the Medicare Act." *Id.* RenCare appealed both rulings. *Id.*

Reversing the district court, this court made two distinct holdings. First, it held that RenCare's claims did not arise under the Medicare Act because the claims were not "inextricably intertwined" with a claim for Medicare benefits. *See id.* at 557–59 (citing *Heckler*, 466 U.S. at 602). Rather, it found that "[a]t bottom, RenCare's claims [were] claims for payment pursuant to a contract between private parties." *Id.* at 559. Second, it held

---

[6] The district court only partially denied RenCare's remand motion. *See RenCare*, 395 F.3d at 557. It remanded RenCare's claims relating to Humana's non-Medicare Advantage customers. *Id.* That distinction is not pertinent here because Caris is only "pursuing monies recouped from previous Medicare Advantage payments."

that "the administrative review process attendant to Part C [i.e., Medicare Advantage] does not extend to claims in which an enrollee has absolutely no interest." *Id.* The panel explained:

> As is evident from the regulations, the administrative review process focuses on enrollees, not health care providers, and is designed to protect enrollees' rights to Medicare benefits. . . . Humana's failure to pay RenCare is not an organization determination subject to the mandatory exhaustion of administrative remedies. No enrollee has requested an organization determination or appeal. No enrollee has been denied covered service or been required to pay for a service. Rather, the [Medicare Advantage] enrollees in this case bear no financial risk inasmuch as they have already received the services for which RenCare seeks reimbursement. In fact, there is a complete absence of [Medicare Advantage] beneficiary interest in this dispute. The only interest at issue is RenCare's interest in receiving payment under its contract with Humana.

*Id.* at 559–60.

*RenCare*'s first holding was premised on the written contract between RenCare and Humana. Our court repeatedly emphasized that "[t]he dispute [was] solely between Humana and RenCare" as it was "based on [their] privately-agreed-to payment plan." *Id.* at 558. And the existence of that contract prevented the case from "arising under" the Medicare Act; the case instead presented only an unadorned breach of contract claim. *See id.* at 558–59. But *RenCare*'s contract-based holding has limited bearing on this case because United removed Caris's claims under our federal-officer jurisdiction, not our federal-question jurisdiction.

By contrast, *RenCare*'s enrollee-interest analysis did not turn on the existence of a contract, and this second holding is dispositive as to whether Caris was required to exhaust administrative remedies before suing United.

Here, as there, "[n]o enrollee has requested an organization determination or appeal"; "[n]o enrollee has been denied [a] covered service or been required to pay for a service"; and all enrollees have already received the services for which United seeks recoupment. *See RenCare*, 395 F.3d at 559–60. Regardless of whether Caris is a contract or non-contract provider, it is prohibited from seeking additional payments from enrollees if it loses this case. *See* 42 U.S.C. § 1395w-22(k)(1), (k)(2)(A)(i). And if United loses, it is prohibited from recouping any costs from enrollees. *See* 42 C.F.R. § 422.504(g)(1). Thus, "there is a complete absence" of enrollee interest in this dispute. *RenCare*, 395 F.3d at 560. The only question is whether United can recoup payments it made to Caris for services already performed. Not only was Caris not required to exhaust administrative remedies before filing suit, "there [were] no administrative remedies for [Caris] to exhaust." *Id.*

United responds that any reliance on *RenCare* is misplaced because *RenCare* involved a dispute in which an MAO and a provider had an "express written agreement." But as just discussed, in determining whether RenCare was required to exhaust administrative remedies, this court did not focus on whether the parties had a written contract; the focus was on whether any enrollee had an interest in the dispute. *See id.* at 559–60.

United points to *Trinity* for support, but that is problematic for two reasons. First, *Trinity* is distinguishable from this case because it involved an MAO's ongoing refusal to reimburse a healthcare provider for services after the MAO determined that the services did not qualify for reimbursement under the Medicare Act. *See* 2023 WL 2573914, at *1. There is no question that an MAO's "refusal to provide or pay for services . . . that the enrollee believes should be furnished or arranged for by the MA[O]" is an organization determination that is subject to exhaustion. 42 C.F.R. § 422.566(b)(3). That is consistent with *RenCare* because an adverse coverage determination means that an enrollee is not entitled to receive a

desired service. Clearly, enrollees have a direct interest in such a dispute. By contrast, United began recouping payments made to Caris between February 2016 and July 2018 for services already preapproved and performed. United fails to show how a billing dispute between an MAO and provider for past services rendered has a direct impact on enrollees.

Second, even if *Trinity* were not distinguishable, we are bound by this court's decision in *RenCare*. As an unpublished opinion, *Trinity* is not binding precedent; *RenCare*, a published opinion, is. *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 560 n.3 (5th Cir. 2015) (citing 5TH CIR. R. 47.5). Further, "[w]hen panel opinions appear to conflict, we are bound to follow the earlier opinion." *H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000). Thus, even assuming tension between *RenCare* and *Trinity*, *RenCare* remains our controlling case.

Lastly, United argues that the relevant statutory and regulatory provisions demonstrate that Caris is acting as a party to an organization determination and therefore must exhaust administrative remedies. Specifically, United asserts that Caris is an "assignee" of enrollee claims, as defined by 42 C.F.R. § 422.574(b). According to United, "it doesn't matter" whether an enrollee actually assigned his or her claim to Caris because an assignee includes any "provider who has furnished a service to [an] enrollee and [has] formally agree[d] to waive any right to payment from the enrollee for that service." *See* § 422.574(b); *see also Tenet*, 875 F.3d at 590–91 (distinguishing *RenCare* and holding that § 422.574(b) "unambiguously defines" noncontract providers as assignees). But *RenCare* expressly rejected that argument, such that an enrollee must actually have a claim to assign for § 422.574(b) to apply. *See* 395 F.3d at 560. As detailed above, no such claim exists in this case. Instead, as in *RenCare*, "[Caris] is pursuing its own claims against [United]." *Id.* Thus, United's recoupment

of payments to Caris "is not an organization determination that [Caris] could appeal within the mandatory administrative review mechanism." *Id.*

\* \* \*

*RenCare* is clear: The administrative review process for Medicare Advantage claims set forth in the Medicare Act and its implementing regulations "focuses on enrollees, not health care providers." *Id.* at 559. When there is a complete lack of enrollee interest in a payment dispute between an MAO and a provider, as in this case, there are no administrative remedies for the provider to exhaust. The district court therefore erred in dismissing Caris's claims for failure to do so.

## IV.

For the foregoing reasons, we AFFIRM the district court's denial of Caris's remand motion. We REVERSE the district court's dismissal of Caris's claims for failure to exhaust and REMAND for proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part; REMANDED.