# United States Court of Appeals
## For the First Circuit

No. 24-1815

HOSPITAL AMERIMED CANCUN S A DE C V,

Plaintiff, Appellant,

v.

MARTIN'S POINT HEALTH CARE, INC.,

Defendant, Appellee.

No. 24-1816

HOSPITAL QUIRURGICA DEL SUR,

Plaintiff, Appellant,

v.

MARTIN'S POINT HEALTH CARE, INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Montecalvo, Kayatta, and Aframe,
Circuit Judges.

Mark A. Darling, with whom Litchfield Cavo, LLP was on brief,
for appellants.

Brian P. Dunphy, with whom Nicole L. Masiello, Alexis P. Gannaway, Alex E. Sirio, and Arnold & Porter Kaye Scholer LLP were on brief, for appellee.

---

August 19, 2025

---

**AFRAME, Circuit Judge.** These consolidated appeals challenge the dismissals of two diversity actions brought by hospitals incorporated and operating in Mexico (together, the "Hospitals") against Martin's Point Health Care, Inc. ("Martin's Point"), a Maine health insurance company. The district court dismissed both actions for lack of subject-matter jurisdiction, concluding that the Hospitals' negligent-misrepresentation and promissory-estoppel claims arose under the Medicare Act, such that the Hospitals were required to exhaust administrative remedies before suing Martin's Point in federal court. See 42 U.S.C. §§ 405(g)-(h), 1395w-22(g)(5), 1395ii. On appeal, the Hospitals contend that they were not required to exhaust administrative remedies because their claims do not arise under the Medicare Act. Alternatively, they argue that they should have been exempted from the exhaustion requirement because, as foreign hospitals, they cannot participate in Medicare's administrative-remedies process. We affirm.

## I.

The facts and procedural history of the two appeals are similar.[1] Each began with a Martin's Point enrollee seeking

---

[1] We draw the facts from the Hospitals' complaints and extrinsic material considered by the district court. See Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The extrinsic material considered was certain correspondence from Martin's Point, as well as benefits-verification forms completed

- 3 -

medical care from one of the plaintiff hospitals while in Mexico. Upon admission, the enrollees signed contracts obligating them to pay for all services rendered by the admitting hospital. They also provided information about their Martin's Point medical insurance. The Hospitals then each contacted Martin's Point through the same third-party administrator. Martin's Point allegedly represented to the administrator that the enrollees had "full medical insurance benefits for the . . . out of country emergency services proposed to be provided." The administrator thereafter created verification-of-benefits forms stating that the enrollees' benefits were "unlimited."

Believing that the enrollees had "unlimited" benefits, the Hospitals provided them with extensive medical treatment. Partway through the enrollees' hospital stays, Martin's Point sent letters authorizing the stays for several days. The letters stated, however, that Martin's Point's authorization was "subject to Medicare coding requirements for coverage" and that "payment [wa]s based on the [enrollee's] eligibility and benefit coverage at the time of service." When the Hospitals discharged the enrollees, the enrollees had incurred medical bills of $2,132,982.98 and $512,464.00, respectively. The Hospitals sought

---

by a third-party administrator used by the Hospitals. No one contends on appeal that the court's consideration of these documents was improper.

reimbursement from Martin's Point, but Martin's Point, asserting that the two enrollees' Medicare Advantage plans capped benefits for out-of-country medical services at $25,000, refused to reimburse the Hospitals above that limit.

The Hospitals then commenced separate civil actions in the District of Maine against Martin's Point based on diversity jurisdiction, 28 U.S.C. § 1332, asserting Maine common-law claims for promissory estoppel and negligent misrepresentation (together, the "common-law claims"). The Hospitals' common-law claims rested on the same premise: By misrepresenting to the third-party administrator that its enrollees' medical insurance would fully cover the proposed course of treatment, Martin's Point had induced the Hospitals to provide non-reimbursable care to the enrollees.

Martin's Point moved to dismiss, arguing that the Hospitals' common-law claims sought, at bottom, reimbursement under the enrollees' Medicare Advantage plans. And Martin's Point submitted that, because the Hospitals had not administratively exhausted their benefits claims under the Medicare Act, the district court lacked subject-matter jurisdiction over the actions. See Fed. R. Civ. P. 12(b)(1). Martin's Point also argued that the Hospitals' common-law claims failed to state claims for relief even if they were not construed as Medicare-benefits claims. See Fed. R. Civ. P. 12(b)(6). The Hospitals opposed the motions, insisting that because they provided care outside the United States

- 5 -

and sought recovery on common-law theories, they were not required to exhaust their claims through Medicare's appeals process. The Hospitals also argued that their complaints plausibly alleged common-law claims for relief.

In substantially identical memorandum opinions, the district court granted Martin's Point's motions to dismiss for lack of subject-matter jurisdiction. See Hosp. Amerimed Cancun S A de C V v. Martin's Point Health Care, Inc., No. 23-cv-00258, 2024 WL 1769171 (D. Me. Apr. 23, 2024) [hereinafter Amerimed I]; Hosp. Quirurgica Del Sur v. Martin's Point Health Care, Inc., No. 23-cv-00259, 2024 WL 1769183 (D. Me. Apr. 23, 2024) [hereinafter Quirurgica I]. The court first described the general administrative-exhaustion requirements for claims arising under Medicare. Amerimed I, 2024 WL 1769171, at *3-4; Quirurgica I, 2024 WL 1769183, at *3-4. Then, turning to the Hospitals' claims, the court concluded that, despite being styled as common-law causes of action, the claims sought to make Martin's Point "pay for services provided to . . . Medicare Part C enrollee[s]" and therefore arose under Medicare. Amerimed I, 2024 WL 1769171, at *5; Quirurgica I, 2024 WL 1769183, at *5. Because the Hospitals had not exhausted their administrative remedies under Medicare Part C before filing suit in federal district court, the court granted Martin's Point's motions and entered judgment dismissing

- 6 -

each case. See Amerimed I, 2024 WL 1769171, at *5; Quirurgica I, 2024 WL 1769183, at *5.

The Hospitals subsequently moved to alter the judgments of dismissal, arguing that, as foreign hospitals, they could not participate in the Medicare Part C administrative-review process and therefore were exempt from the administrative-exhaustion requirement. See Fed. R. Civ. P. 59(e). In substantially identical memorandum opinions, the district court denied the motions. See Hosp. Amerimed Cancun S A de C V v. Martin's Point Health Care, Inc., No. 23-cv-00258, 2024 WL 3759728 (D. Me. Aug. 12, 2024) [hereinafter Amerimed II]; Hosp. Quirurgica Del Sur v. Martin's Point Health Care, Inc., No. 23-cv-00259, 2024 WL 3759746 (D. Me. Aug. 12, 2024) [hereinafter Quirurgica II]. It explained that by refusing to reimburse the Hospitals for the full value of the services rendered, Martin's Point had made so-called "[o]rganization determinations" under Medicare Part C, which were subject to mandatory administrative appeal. Amerimed II, 2024 WL 3759728, at *2; Quirurgica II, 2024 WL 3759746, at *2. And, noting that the Hospitals had failed to provide legal authority to support their argument that, by virtue of their foreign status, they were precluded from participating in the administrative-review process, the court concluded that the Hospitals had not shown that the dismissal of their complaints rested on a manifest error of law, as required by Rule 59(e). Amerimed II, 2024 WL 3759728, at *2;

- 7 -

Quirurgica II, 2024 WL 3759746, at *2.  The Hospitals timely appealed, and we have jurisdiction under title 28, section 1291.

## II.

As made applicable to Medicare Part C by title 42, section 1395w-22(g)(5), title 42, section 405(g) provides for judicial review of "final decision[s]" of the Secretary of Health and Human Services regarding the availability of Medicare Part C benefits and the amounts, if any, due in benefits reimbursement. Judicial review under section 405(g) is "ma[de] exclusive" by section 405(h), which strips federal jurisdiction over other civil actions brought "against the United States, the [Secretary of Health and Human Services], or any officer or employee thereof . . . under section 1331 or 1346 of title 28 to recover on any claim arising under" Medicare Part C.[2]  Shalala v. Ill. Council on

---

[2]    Although subject-matter jurisdiction in these cases rests on title 28, section 1332 -- not sections 1331 or 1346, see 42 U.S.C. § 405(h) -- the Hospitals have not argued that they are exempt from section 405(h)'s bar for this reason.  Because the Hospitals have waived any argument that section 405(h) does not apply to civil actions brought under section 1332, we do not consider the question here.  See Mass. Lobstermen's Ass'n v. Menashes, 127 F.4th 398, 403 n.2 (1st Cir. 2025).  The Hospitals likewise have never argued that Martin's Point, as a Medicare Advantage organization, is not a federal officer for the purposes of 405(h).  But see Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc., 30 F.4th 905, 915-17 (9th Cir. 2022) (holding that Medicare Advantage organizations are "officers or employees" of the federal government).  That argument too is therefore waived. See Mass. Lobstermen's Ass'n, 127 F.4th at 403 n.2.

Long Term Care, Inc., 529 U.S. 1, 10 (2000) (emphasis omitted) (quoting 42 U.S.C. § 405(h)); see 42 U.S.C. § 1395ii.

It is undisputed that the Secretary has not issued "final decision[s]" regarding the amounts reimbursable by Martin's Point to the Hospitals for the services they rendered to its enrollees. 42 U.S.C. §§ 405(g), 1395w-22(g)(5). The Hospitals' argument is, in essence, that they may pursue their common-law claims in federal district court notwithstanding section 405(h)'s jurisdictional bar because their claims do not "aris[e] under" Medicare. 42 U.S.C. §§ 405(h), 1395ii. The Hospitals also argue that, if their claims do arise under Medicare, their failure to pursue those claims through administrative channels should be excused because, as foreign hospitals, they are unable to participate in Medicare Part C's administrative-review process. See Ill. Council, 529 U.S. at 19 (holding that section 1395ii does not apply section 405(h) to Medicare Part B where doing so "would not simply channel review through the agency, but would mean no review at all").

We address the Hospitals' arguments in turn. To set the stage for our analysis, we first provide some general background about Medicare Part C and describe when a claim "aris[es]" thereunder. 42 U.S.C. §§ 405(h), 1395ii.

**A.**

Medicare is a federal health-insurance program that primarily serves those sixty-five years of age and older. See

- 9 -

First Med. Health Plan v. Vega-Ramos, 479 F.3d 46, 48 (1st Cir. 2007). When enacted in 1965, Medicare covered inpatient care (through Medicare Part A, presently codified at 42 U.S.C. §§ 1395c to 1395i-6) and outpatient care (through Medicare Part B, presently codified at 42 U.S.C. §§ 1395j to 1395w-6). See First Med. Health Plan, 479 F.3d at 48. Under Parts A and B -- sometimes referred to together as "original Medicare," see, e.g., 42 C.F.R. § 422.2 (2025) -- the federal government reimburses healthcare providers on a fee-for-service basis at rates set by the Centers for Medicare and Medicaid Services (CMS), an agency within the Department of Health and Human Services. See Glob. Rescue Jets, 30 F.4th at 909. Original Medicare usually does not provide reimbursement for services rendered outside of the United States. See 42 C.F.R. §§ 424.121-424.122 (2025).

In 1997, Congress enacted Medicare Part C. See Pub. L. No. 105-33, § 4001, 111 Stat. 251, 275-327 (1997) (codified as amended at 42 U.S.C. §§ 1395w-21 to 1395w-29).[3] Medicare Part C permits Medicare beneficiaries to enroll in private health insurance plans, known as Medicare Advantage plans. See 42 U.S.C. § 1395w-21. Private entities, known as Medicare Advantage organizations, administer these plans. See id. § 1395w-21(a)(2).

---

[3] Certain provisions of Medicare Part C, including section 1395w-21, refer to "Medicare+Choice," which was the name by which the Medicare Advantage program was previously known. See Vega-Ramos, 479 F.3d at 48 n.1.

Medicare Advantage organizations receive a fixed monthly sum from the federal government for each enrollee.  See id. § 1395w-23(a)(1)(A); 42 C.F.R. § 422.304(a) (2025).  In exchange for these payments, Medicare Advantage organizations must provide enrollees with the benefits available under original Medicare, subject to several exceptions not relevant here.  See 42 U.S.C. § 1395w-22(a)(1); 42 C.F.R. §§ 422.100(a), (c)(1), 422.101 (2025).  These are known as "basic benefits."  42 U.S.C. § 1395w-22(a); 42 C.F.R. § 422.2 (2025).

In addition to basic benefits, Medicare Advantage plans may offer, subject to approval by the Department of Health and Human Services, "supplemental benefits" for services not covered by original Medicare.  See 42 U.S.C. § 1395w-22(a)(3); 42 C.F.R. §§ 422.100(c)(2), 422.102 (2025); see also Glob. Rescue Jets, 30 F.4th at 909.  Enrollees pay for these supplemental benefits through additional premiums or increased cost-sharing.  See 42 C.F.R. § 422.100(c)(2)(i) (2025).  Supplemental benefits, which vary from plan to plan, may include out-of-country medical services.[4]

_____

[4]   For instance, Martin's Point advertises its Medicare Advantage plans as offering out-of-country emergency and urgent care supplemental benefits:

> All our [Medicare Advantage] plans -- whether they are an HMO, HMO-POS, or LPPO plan -- cover you for urgent and emergency

- 11 -

To provide basic and supplemental benefits, Medicare Advantage organizations may contract with healthcare providers.[5] See 42 C.F.R. §§ 422.200-422.224 (2025). These contracts establish the terms of reimbursement for services provided to the Medicare Advantage organization's enrollees under specific Medicare Advantage plans. See RenCare, Ltd. v. Humana Health Plan

_____

> care, anywhere in the world. Feel dizzy while
> sightseeing in Rome and need to see a doctor?
> Twist your ankle and need an urgent X-ray in
> . . . Mexico? No problem. We have your back.

Understanding Medicare: Get the Care You Need, Wherever You Are, Martin's Point (Jan. 10, 2024), https://martinspoint.org/Generations-Advantage/Newsletter/All-Articles/Understanding-Medicare [https://perma.cc/4UL7-Q76C]. Other Medicare Advantage insurers do as well. See, e.g., Mark Pabst, How Medicare Advantage Can Provide Coverage While You're Traveling, Aetna (updated June 3, 2025), https://www.aetna.com/medicare/understanding-medicare/medicare-for-travelers.html [https://perma.cc/K59Z-MJ5G] (noting that original Medicare does not cover emergency room and urgent care outside the United States, but that Aetna's Medicare Advantage plans provide such coverage).

[5] Medicare Part C regulations define a "provider" as follows:

> (1) Any individual who is engaged in the delivery of health care services in a State and is licensed or certified by the State to engage in that activity in the State; and

> (2) Any entity that is engaged in the delivery of health care services in a State and is licensed or certified to deliver those services if such licensing or certification is required by State law or regulation.

42 C.F.R. § 422.2 (2025).

of Tex., Inc., 395 F.3d 555, 558-59 (5th Cir. 2004); Glob. Rescue Jets, 30 F.4th at 909-10. Not all providers enter such contracts, however. See Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co., 875 F.3d 584, 587-88 (11th Cir. 2017); Caris MPI, Inc. v. UnitedHealthcare, Inc., 108 F.4th 340, 344 (5th Cir. 2024). If an enrollee receives covered services from a healthcare provider that does not have a contract with the Medicare Advantage organization -- referred to by federal regulations as a non-contract provider, see, e.g., 42 C.F.R. § 422.214 (2025) -- the provider generally must accept reimbursement for the services at original-Medicare rates. See id.; 42 U.S.C. § 1395w-22(k)(1); see also Glob. Rescue Jets, 30 F.4th at 910.

Federal law and regulations charge Medicare Advantage organizations with the initial responsibility for deciding whether services are covered under their Medicare Advantage plans and, if so, the reimbursement rates for those services. See 42 U.S.C. § 1395w-22(g)(1); 42 C.F.R. § 422.566 (2025). Coverage decisions made by Medicare Advantage organizations are called "organization determinations." See 42 C.F.R. § 422.566 (2025). Organization determinations include the refusal "to provide or pay for services, in whole or in part . . . , that the enrollee believes should be furnished or arranged for" by the Medicare Advantage organization. Id. § 422.566(b)(3). An enrollee may request an organization determination from their Medicare Advantage organization, as may

- 13 -

the representative of the enrollee and "[a]ny provider that furnishes, or intends to furnish, services to the enrollee." See id. § 422.566(c)(1).

Unsurprisingly, sometimes there are disputes over coverage and reimbursement under Medicare Advantage plans. Medicare Part C contains a multi-step process through which a dissatisfied party may administratively appeal an organization determination.[6] See 42 U.S.C. § 1395w-22(g); 42 C.F.R. §§ 422.560-422.634 (2025). The "final decision" of the agency is reviewable in federal district court, subject to the satisfaction of an amount-in-controversy requirement. See 42 U.S.C. §§ 405(g), 1395w-22(g)(5).

**B.**

Judicial review of the Secretary's final decision is the "purport[edly] . . . exclusive" means of access to federal court,

---

[6] Medicare Part C regulations define the parties to an organization determination as follows:

> (a) The enrollee (including his or her representative); (b) An assignee of the enrollee (that is, a physician or other provider who has furnished a service to the enrollee and formally agrees to waive any right to payment from the enrollee for that service); (c) The legal representative of a deceased enrollee's estate; or (d) any other provider or entity (other than the [Medicare Advantage] organization) determined to have an appealable interest in the proceeding.

42 C.F.R. § 422.574 (2025).

- 14 -

Ill. Council, 529 U.S. at 10, for claims that "aris[e] under" Medicare Part C, 42 U.S.C. § 405(h).[7] "[A] claim 'arises under' the . . . Medicare Act if 'the standing and the substantive basis' for the claim derive from that statute." Puerto Rican Ass'n of Physical Med. & Rehab., Inc. v. United States, 521 F.3d 46, 48 (1st Cir. 2008) (quoting Weinberger v. Salfi, 422 U.S. 749, 761 (1975)); see also Heckler v. Ringer, 466 U.S. 602, 615 (1984) (same).

The Medicare Act provides "the standing and the substantive basis," Heckler, 466 U.S. at 615, for a "typical . . . Medicare benefits case, where an individual seeks a monetary benefit from the agency . . . , the agency denies the benefit, and the individual challenges the lawfulness of that denial," Ill. Council, 529 U.S. at 10. It also provides the standing and substantive basis for claims that challenge, "on general legal

---

[7] Section 405(h), which by its terms pertains to the Social Security statutes, is "incorporated mutatis mutandis," into Medicare Parts A through D by title 42, section 1395ii. See Ill. Council, 529 U.S. at 16 (quoting Bowen v. Mich. Acad. of Fam. Physicians, 476 U.S. 667, 680 (1986)) (addressing incorporation into Medicare Part B); 42 U.S.C. § 1395ii. Because the Hospitals do not contend that section 405(h), as incorporated into Medicare Part C, applies in a manner materially different from section 405(h) as incorporated into original Medicare, we consider decisions concerning section 405(h)'s application to claims arising under original Medicare as instructive as to the scope of the provision for the purposes of this appeal. See Glob. Rescue Jets, 30 F.4th at 914 (concluding that "the constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C" and to claims for benefits under original Medicare).

grounds," the lawfulness of a rule or regulation that "might later bar recovery of" benefits, id. (emphasis omitted), as well as other claims that are "inextricably intertwined" with Medicare-benefits determinations, Heckler, 466 U.S. at 614; see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 376 & n.6, n.7 (2004) (noting that "arising under" as used in section 405(h) covers more claims than those for which "federal law provides a necessary element").[8]

Claims do not arise under Medicare, however, if they are "wholly collateral to" its "review provisions and outside the agency's expertise." Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212 (1994) (citation modified) (quoting Heckler, 466 U.S. at 618). The federal courts of appeals have described such claims as concerning issues "completely separate" from the substantive claim

---

[8] See, e.g., Glob. Rescue Jets, 30 F.4th at 918-19 (contract and state statutory claims arose under the Medicare Act where their resolution required Medicare-benefits determinations); Blue Valley Hosp., Inc. v. Azar, 919 F.3d 1278, 1283-84 (10th Cir. 2019) (same for procedural due process claim challenging the termination of a Medicare provider agreement); Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc., 694 F.3d 340, 347-49 (3d Cir. 2012) (same for tort and contract claims that turned on whether certain recoupment decisions were correct); Wilson ex rel. Est. of Wilson v. United States, 405 F.3d 1002, 1010-13 (Fed. Cir. 2005) (same for illegal-exaction claim seeking to recover a portion of a medical-malpractice settlement paid from the decedent's estate to the Department of Health and Human Services, on behalf of Medicare); Midland Psychiatric Assocs. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998) (same for tortious-interference and negligent-supervision claims relating to denials of Medicare claims); Bodimetric Health Servs. v. Aetna Life & Cas., 903 F.2d 480, 483-87 (7th Cir. 1990) (same for tort, statutory, and contract claims predicated on denials of benefits claims).

to benefits, Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354, 363 (6th Cir. 2000); provable "without regard to any provisions of the [Medicare] Act relating to provision of benefits," Do Song Uhm v. Humana, Inc., 620 F.3d 1134, 1145 (9th Cir. 2010); or capable of being "brought without reference to the Medicare Act," Nat'l Infusion Ctr. Ass'n v. Becerra, 116 F.4th 488, 505 (5th Cir. 2024). These various formulations reflect a consensus that a claim usually does not arise under Medicare where a court does not need to interpret the Medicare Act to grant relief, and the relief ultimately sought is not Medicare benefits or their practical equivalent. See, e.g., Nichole Med. Equip., 694 F.3d at 348; Do Song Uhm, 620 F.3d at 1145; Nat'l Infusion Ctr. Ass'n, 116 F.4th at 505; see also Blue Valley Hosp., 919 F.3d at 1285 ("For a claim to be collateral, it must not require the court to immerse itself in the substance of the underlying Medicare claim or demand a factual determination as to the application of the Medicare Act." (quoting Family Rehab., Inc. v. Azar, 886 F.3d 496, 501 (5th Cir. 2018))).

## c.

With this framework in mind, we return to the Hospitals' arguments. The Hospitals' principal argument is that they were not required to exhaust administrative remedies for their common-law claims because neither the treatment that they provided to the Martin's Point enrollees nor the civil actions that they later

- 17 -

filed had anything to do with Medicare. The Hospitals contend that, "as Medicare enrollees," the Martin's Point enrollees were "not entitled to any out-of-country health benefits from Medicare." The Hospitals' point seems to be that any "out-of-country" benefits owed to the enrollees under their Medicare Advantage plans could not be Medicare benefits, and claims concerning the existence or non-existence of those benefits consequently cannot "aris[e] under" Medicare. 42 U.S.C. §§ 405(h), 1395ii.

The Hospitals' argument misapprehends the nature of supplemental benefits under Medicare Part C. Although coverage under original Medicare may not extend to the sorts of services that the Hospitals rendered to the enrollees, see 42 C.F.R. §§ 411.9, 424.120-424.127 (2025), Medicare Advantage plans, such as those that Martin's Point issued to the enrollees here, can provide supplemental benefits for medical care rendered abroad, see supra II.A. Supplemental benefits constitute Medicare benefits for the purposes of the administrative-remedies provisions of Medicare Part C and related regulations. See Glob. Rescue Jets, 30 F.4th at 918; 42 U.S.C. § 1395w-22; 42 C.F.R. § 422.566(a) (2025). And the Hospitals do not contend that disputes concerning Medicare benefits are outside of Medicare "Part C's administrative review scheme," Glob. Rescue Jets, 30 F.4th at 918; see 42 C.F.R. § 422.566(a)-(b) (2025); we therefore

- 18 -

assume that they are subject to the scheme. Thus, although the fact that the services at issue were rendered abroad by foreign hospitals may bear on the extent of Martin's Point's reimbursement obligations under its plans, it does not remove the reimbursement dispute entirely from the scope of Medicare Part C.

With that misapprehension dispelled, it is apparent that the Hospitals' common-law claims "aris[e] under" Medicare Part C. 42 U.S.C. §§ 405(h), 1395ii. To recover on these claims, the Hospitals must prove, inter alia, that, contrary to Martin's Point's alleged representations, the Medicare Advantage plans at issue did not, in fact, provide unlimited benefits for the disputed medical services. See Rand v. Bath Iron Works Corp., 832 A.2d 771, 774 (Me. 2003) (noting that information provided must be false to maintain a negligent-misrepresentation claim); Harvey v. Dow, 962 A.2d 322, 325 (Me. 2008) (requiring promise to be "otherwise unenforceable" to maintain a promissory-estoppel claim (quoting Daigle Com. Grp., Inc. v. St. Laurent, 734 A.2d 667, 672 (Me. 1999))). We see no way for the Hospitals to make that showing that would not require the district court to redecide Martin's Point's organization determination about the extent of benefits due under its plans. See Glob. Rescue Jets, 30 F.4th at 919 (concluding that tort claims arose under Medicare Part C when their success "rest[ed] directly on the interpretation of benefits provided under" a Medicare plan). The Hospitals' claims,

- 19 -

consequently, are not "independent," Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1115 (9th Cir. 2003), or "separate," Nichole Med. Equip., 694 F.3d at 348, from the underlying Medicare supplemental-benefits determinations, but rather are "inextricably intertwined" with them, Heckler, 466 U.S. at 614.  As a result, the claims "aris[e] under" Medicare Part C.[9]  42 U.S.C. §§ 405(h), 1395ii.

The Hospitals' promissory-estoppel claims may arise under Medicare Part C for a second reason.  The Hospitals' argument, as we have described it so far, is premised upon the unavailability of Medicare benefits for services rendered abroad.  At times, however, the Hospitals appear to advance the separate and seemingly contradictory argument that benefits covering these services may be available under the Martin's Point plans, but as a practical matter cannot be recovered by the Hospitals because Martin's Point will not pay the benefits voluntarily and the Hospitals are unable to participate in the administrative-review

---

[9]    We need not address whether tort claims would arise under Medicare where the allegedly tortious conduct was undertaken by the defendant independent of its role as a Medicare Advantage organization administering a benefits plan.  Cf. Do Song Uhm, 620 F.3d at 1145 (holding that enrollees' false-advertising and consumer-protection claims against a Medicare Advantage organization were "wholly collateral to a claim for benefits" where plaintiffs could prove the elements of their claims "without regard to any provisions of [Medicare Part D] relating to provision of benefits." (quotation marks and citation omitted)).

process necessary to force Martin's Point to pay, see infra II.D.[10] If the Hospitals intend to assert that they are entitled to additional reimbursement under the enrollees' Medicare Advantage plans, as it appears that they do, then their attempt to enforce their entitlement to those benefits through a promissory-estoppel claim would be virtually indistinguishable from a direct claim for Medicare Part C benefits. See Heckler, 466 U.S. at 614 (holding that claims arose under the Medicare Act where, "at bottom," they sought benefits). And claims for benefits arise under Medicare, no matter how "[c]leverly concealed" they may be. Do Song Uhm, 620 F.3d at 1141 (alteration in original) (quoting Kaiser, 347 F.3d at 1112).

The Hospitals' remaining arguments are without merit. The Hospitals contend that their common-law claims do not arise under Medicare because they sound in tort and seek to recover damages. But "[a] claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law," Midland Psychiatric Assocs., 145 F.3d at 1004, and "the type of remedy sought is not strongly probative of whether a claim" arises under Medicare, Kaiser, 347 F.3d at 1112.

---

[10]     The Hospitals declined to concede at oral argument that they are not entitled to benefits under the Martin's Point Medicare Advantage plans. And nowhere have they explained what, if not the plans, would entitle them to the approximately $25,000 per insured that Martin's Point has paid them so far.

The Hospitals also rely on the Fifth Circuit's decisions in Caris MPI, Inc. v. UnitedHealthcare, Inc., 108 F.4th 340 (5th Cir. 2024) and RenCare, Ltd. v. Humana Health Plan of Texas, Inc., 395 F.3d 555 (5th Cir. 2004). Noting that they are asserting claims in their own right (and not as assignees of the enrollees), the Hospitals contend that, as in Caris and RenCare, the enrollees have no interest in these actions. See Caris, 108 F.4th at 350; RenCare, 395 F.3d at 560. Caris and RenCare, however, turned on facts that are not present here. RenCare concerned a reimbursement dispute between a Medicare Advantage organization and a provider, but, unlike here, the reimbursement terms were set by a contract between the parties, and the dispute could be resolved under that contract without reference to underlying Medicare law. See 395 F.3d at 558-59. Moreover, the contract waived the provider's right to recover from the enrollees, meaning that regardless of how the contract dispute resolved, no enrollee would face liability. See id.

Caris, for its part, concerned a dispute between a provider and a Medicare Advantage organization over the latter's efforts to recoup alleged overpayments discovered during a post-payment audit. See 108 F.4th at 345. The provider sued, principally challenging the recoupments as having violated an unwritten contract between the parties, implied from their longstanding course of dealing. See Caris MPI, Inc. v.

- 22 -

UnitedHealthcare, Inc., No. 21-CV-3101-X, 2023 WL 4768187, at *1 (N.D. Tex. July 26, 2023), aff'd in part, rev'd in part and remanded, 108 F.4th 340. The Fifth Circuit concluded that no enrollee had an interest in the "only question" presented by the case, i.e., "whether [the Medicare Advantage organization] can recoup payments it made to [the provider] for services already performed." Caris, 108 F.4th at 350. The recoupment did not amount to an organization determination; no enrollee had been denied benefits; and no enrollee stood to face liability, regardless of the outcome of the parties' dispute. See id. at 350-51. Relying on RenCare, the Fifth Circuit held that administrative exhaustion was not required. See id.

Here, by contrast, there is no allegation of a contract between Martin's Point and the Hospitals; Martin's Point's conclusion that certain benefits were not covered was an organization determination; and the Hospitals' complaints state that the enrollees are personally responsible to the Hospitals for the unreimbursed costs of their care. Caris and RenCare thus fail to support the Hospitals' argument that their claims do not arise under Medicare Part C.

**D.**

Our conclusion that the Hospitals' claims "aris[e] under" Medicare does not fully resolve these appeals. 42 U.S.C. §§ 405(h), 1395ii. Claims that "aris[e] under" Medicare Part C

- 23 -

may be brought in federal court notwithstanding section 405(h)'s jurisdiction-stripping provision if an administrative-exhaustion requirement "would not lead to a channeling of review through the agency" but instead "would mean no review at all."[11] Ill. Council, 529 U.S. at 17. Although the Hospitals do not cite Illinois Council, they contend in substance that its exception should apply here because, as foreign hospitals, they are, in their words, "simply . . . not eligible" and "do not have standing" to participate in the administrative-appeals process.

The Hospitals did not raise their Illinois Council argument or anything resembling it below until their Rule 59(e) motions seeking relief from the judgments dismissing their respective cases. "[A]rguments that could have been but were not presented to the district court prior to judgment are not preserved for appeal." Disaster Sols., LLC v. City of Santa Isabel, 21 F.4th 1, 7 (1st Cir. 2021). And raising an argument in a motion for reconsideration, as the Hospitals have done here, "neither cures the original omission nor preserves the argument as a matter of

_____

[11] None of the parties contend that the Illinois Council exception applies to Medicare Part C differently than it does to Medicare Parts A and B. See Ill. Council, 529 U.S. at 17. For the purposes of this appeal, we assume no difference in the application of the exception to Medicare Part C.

right for appellate review."[12]  Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006).  Rule 59(e) motions are intended to provide relief where the "judgment evidence[s] a manifest error of law," Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (quoting Glob. Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007)), and it is rarely error -- let alone manifest error -- for the district court to have entered judgment without passing on an argument that was not raised, see United States v. Rivera-Rodríguez, 75 F.4th 1, 26 (1st Cir. 2023).

In any event, the Hospitals have failed to demonstrate that the Illinois Council exception applies here.  The Hospitals' argument is that they are ineligible to participate in Medicare Part C, including its administrative-review process, because they are not "providers" as defined by the pertinent regulations.  They contend that because a "provider" is an "entity . . . engaged in the delivery of health care services in a State," they are not included, since they operate in Mexico.  42 C.F.R. § 422.2 (2025)

---

[12]    The Hospitals contend that they were free to raise their Illinois Council argument at any time because the argument goes to subject-matter jurisdiction.  Although the lack of subject-matter jurisdiction may be raised at any time, a party may not freely debut new arguments in support of subject-matter jurisdiction after their case has been dismissed.  See Seafreeze Shoreside v. U.S. Dep't of Interior, 123 F.4th 1, 17-18 (1st Cir. 2024); Bronner v. Duggan, 962 F.3d 596, 611 (D.C. Cir. 2020) ("[A]rguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice." (quoting NetworkIP, LLC v. FCC, 548 F.3d 116, 120 (D.C. Cir. 2008))).

(emphasis added). The Hospitals then submit that, as non-providers, they are barred from participating in the Medicare Part C administrative-review process.

But the Hospitals give essentially no explanation for that final -- and critical -- portion of their argument, i.e., that, as non-providers, they are barred from the administrative-review process. Their appellate briefs, like their Rule 59(e) motions, principally rely on an affidavit from the chief executive of their third-party administrator. The affidavit states that, in the executive's experience, CMS rejects administrative appeals from foreign hospitals "out of hand" because such hospitals, not qualifying as providers, "have no status with CMS."[13] The affidavit does not elaborate on this point, and the Hospitals do not explain

---

[13] Whether CMS does in fact reject such appeals is not clear from the record. Two emails attached to the chief executive's affidavit as proof of this practice are at best inconclusive. Nevertheless, the Hospitals assert we must accept as a well-pleaded fact that CMS "does not review or handle disputes between a foreign provider and a Medicare Advantage Organization." But insofar as the chief executive intended to say that CMS has no legal authority to handle such disputes, the ostensible fact is simply a legal conclusion. See Thompson v. JPMorgan Chase Bank, N.A., 982 F.3d 809, 811 (1st Cir. 2020) (noting that, in assessing whether a plaintiff's complaint has stated a claim, courts do not accept "legal conclusions clothed as factual allegations"). And insofar as the Hospitals intend instead to argue that CMS's "pattern of conduct" in rejecting disputes involving foreign hospitals permits us to conclude that there is a de facto exclusion of the Hospitals from the administrative review process, we cannot do so based on two facially inconclusive emails unaccompanied by "the legal analysis necessary to develop such an argument." Puerto Rican Ass'n, 521 F.3d at 50.

- 26 -

why their not being providers leads them to have "no status" with CMS, what having "no status" with CMS means as a legal matter, or why having "no status" with CMS results in their preclusion from participating in the administrative-review process. Failing to explain how or why they are supposedly foreclosed from participating in the administrative-review process, the Hospitals cannot establish that the Illinois Council exception applies here. See W.R. Cobb Co. v. V.J. Designs, LLC, 130 F.4th 224, 239 (1st Cir. 2025) ("[D]eveloping a sustained argument out of [the record] and legal precedents is the job of the appellant, not the reviewing court . . . ." (alterations in original) (quoting Town of Norwood v. FERC, 202 F.3d 392, 405 (1st Cir. 2000))). We therefore conclude that the district court's denial of the Hospitals' Rule 59(e) motions was not an abuse of discretion.

## III.

For the reasons stated, we **affirm** the district court's dismissals of the Hospitals' complaints for lack of subject-matter jurisdiction and the denials of the Hospitals' Rule 59(e) motions.